Hattie Belle PERKINS,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–978A223.

Court of Appeals of Indiana,
Third District.

July 25, 1979.

Harriette Bailey Conn, Public Defender, Marcia L. Dumond, David P. Freund, Deputy Public Defenders, Indianapolis, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

At 3:00 p. m. on October 16, 1977, Mandy Lynn Perkins, age 13 months, was admitted to Wabash County Hospital and was pronounced dead on arrival. Mandy had multiple bruises over her body, the worst being a bruise on her lower left chest extending across her abdomen. Her death was determined to be caused by several severe blows to the abdomen causing serious internal blood loss and injuries to abdominal organs. The pathologist determined that the blows had been inflicted up to 24 hours prior to death. Eddie Childress admitted that he had struck the child four times in the abdomen and head on October 15 at approximately 3:00–3:30 p. m. Mandy's mother, appellant Hattie Belle Perkins (Perkins) was in the next room when Mandy was beaten. She came to the child and Childress and spoke with Childress about hitting Mandy. After the beating, Mandy vomited, cried, appeared pale and listless. No medical attention was sought until the following afternoon when she was barely able to breathe. Mandy was taken to the hospital by her mother at Childress' suggestion. In a statement made to the police, Perkins admitted that she knew that Childress had beaten the child and that she should have taken Mandy to the hospital.

Perkins was convicted of the offense of neglect of a dependent[1] and was sentenced to a fixed term of three years' imprisonment. On appeal, she raises the following issues:

1. Whether the trial court erred in admitting the statement Perkins made to the police.

2. Whether the trial court erred in admitting state's exhibits 4, 5, 6, 8 and 9 into evidence.

3. Whether the trial court erred in considering the age of the child as an aggravating circumstance for the purpose of sentencing.

4. Whether the evidence was sufficient as a matter of law to sustain the conviction.

---

1. "35–46–1–4. Neglect of a dependent.—(a) person having the care, custody, or control of a dependent who knowingly or intentionally:

  (1) Places the dependent in a situation that may endanger his life or health;

  (2) Abandons or cruelly confines the dependent;

  (3) Deprives the dependent of necessary support; or

  (4) Deprives the dependent of education as required by law; commits neglect of a dependent, a class D felony.

(b) It is a defense that the accused person, in the legitimate practice of his religious belief, provided treatment by spiritual means through prayer, in lieu of medical care, to his dependent. [IC 35–46–1–4, as added by Acts 1976, P.L. 148, § 6, p. 718; 1977, P.L. 340, § 87, p. 1533; 1978, P.L. 144, § 8, p. 1313.]"

*Issue I:*

█ Perkins first argues that the trial court erred in finding that her confession was made voluntarily. She asserts that she did not make a knowing and intelligent waiver of her constitutional rights since she was not fully advised of her rights and the rights were not adequately explained. In reviewing a trial court's determination of the voluntariness of a confession, this court looks to the totality of the circumstances. In doing so, we do not weigh the evidence or rejudge the credibility of the witnesses. We consider the evidence which supports the trier of fact where the evidence is in conflict, along with any uncontested evidence. *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188; *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811; *Villanueva v. State* (1978), Ind.App., 383 N.E.2d 437.

█ Although the state is required to prove the voluntariness of Perkins' confession beyond a reasonable doubt, we review the question on appeal as we do other sufficiency matters: to determine whether there was substantial probative evidence to support the trial court's finding. *Murphy v. State* (1977), Ind., 369 N.E.2d 411.

The evidence reveals that on October 27, 1977, Perkins was contacted by Officer Jerry West and was requested to come to the police station to give a statement. Upon her arrival at the station, Perkins was served with an arrest warrant. Officer West then read Perkins her rights from a *Miranda* card and from the statement form. She was asked if she understood her rights and she answered that she did. The statement was taken in a question and answer form and was typed contemporaneously with the questioning. After the statement was completed, Perkins was given the statement to read and sign. Perkins, as well as the officers present, signed the statement.

█ Perkins contends that she was not adequately informed of her constitutional right to counsel because she was not advised she could end the questioning until her lawyer was present. The statement form states that Perkins was advised of her right to the advice and presence of a lawyer before or at any time during questioning and that one would be appointed if she could not afford an attorney. She was advised that she did not have to make any statement or answer any questions at all. Such advice adequately informed Perkins of her right to counsel.

█ Perkins also contends that she did not understand the meaning of the words used in the form and therefore did not understand her rights. However, when Officer West asked her if she understood her rights, she answered that she did. We find that there was sufficient evidence of probative value to support the court's finding that Perkins understood her constitutional rights. The rights were read to her twice and she acknowledged that she understood them. Perkins did not ask for explanation of any of the words used nor for a further explanation of her rights.

█ Perkins next contends that her waiver was not intelligently made because she was not informed of the charge against her until after the statement was made. She admits, however, that the time on the return indicates that the arrest warrant was read to her before the statement process began. Officer Smith testified that Perkins was under arrest when she made the statement.[2]

After considering the totality of the circumstances we cannot say that the trial court erred in finding that the statement was voluntarily made.

Perkins also contends that the statement was wrongfully admitted because the state did not establish a corpus delicti before the statement was introduced.

█ Either before *or after* an extrajudicial confession or statement is admitted into evidence, there must be evidence independent of the statement to establish that the specific crime charged in the indictment

2. Smith first testified that Perkins was not under arrest when the statement was taken but corrected his testimony after seeing the arrest warrant.

or information was committed by someone at the time and place alleged. *Thomas v. State* (1975), 262 Ind. 590, 321 N.E.2d 194; *Smith v. State* (1975), Ind.App., 339 N.E.2d 118. To corroborate an extrajudicial statement, the corpus delicti may be established by circumstantial evidence. *Dunbar v. State* (1961), 242 Ind. 161, 177 N.E.2d 452; *Smith, supra.* It is not necessary to prove the corpus delicti beyond a reasonable doubt. *Smith, supra; Duling v. State* (1976), Ind.App., 354 N.E.2d 286.

The state established the corpus delicti in the present case through the testimony of Eddie Childress, Dr. William Boaz and Dr. Ladislas Wojcik.

Childress testified that he had beaten Mandy while Perkins was in the next room. He was unsure as to whether Perkins had actually seen him hit the child but she did enter the room afterwards to talk to Childress about hitting Mandy. After the beating Mandy cried "some" that night and the next day. She also vomited and was pale and sick looking. Perkins took care of Mandy after the beating and gave her a bath that evening. Dr. Boaz testified that Mandy had multiple bruises over her body when brought to the hospital after her death. The photographs taken shortly after her death revealed bruises which would be apparent to the most casual observer.

Dr. Wojcik testified that a child with injuries such as those suffered by Mandy would have become extremely listless, would have vomited and would have moaned continuously. Breathing would have become labored and the skin would have appeared pale and clammy. These symptoms would gradually lessen as the child went into shock and became unconscious.

From this evidence it can be inferred that Perkins, a person having custody of the child, knowing the child was either seriously ill or injured, deprived her of medical attention.

The trial court did not err in admitting the statement.

*Issue II:*

Perkins objected to the admission of five photographs of Mandy taken shorty after her death on the grounds that they were repetitive and prejudicial.

Trial courts have wide discretion in determining the admissibility of photographic evidence. *Brandon v. State* (1978), Ind., 374 N.E.2d 504. The test to be applied is whether the photographs are relevant to any material issue. They are relevant if they evidence anything a witness would be permitted to testify to if identified and verified by the witness. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482; *Brandon, supra.*

The photographs introduced at trial were relevant for the purpose of depicting the location and extent of the bruises on Mandy's body. Although the photographs were repetitive and might be described as gruesome, their admission was not reversible error since it cannot be said that their relevancy was outweighed by their potential to prejudice the defendant's fair trial. *Merritt v. State* (1978), Ind., 371 N.E.2d 382; *Bates v. State* (1977), Ind., 366 N.E.2d 659; *Nading v. State* (1978), Ind., 377 N.E.2d 1345.

*Issue III:*

Perkins' next assignment of error is that the trial court erroneously considered the age of the victim as an aggravating circumstance for the purpose of sentencing.

The offense of neglect of a dependent child is a class D felony which carries a penalty of a fixed term of two years' imprisonment with not more than two years added for aggravating circumstances and a possible fine up to $10,000. IC 35–50–2–7.

In the case at bar, the trial court in sentencing Perkins to a three year term found that aggravating circumstances existed because the victim of the crime was mentally and physically infirm, being 13 months of age, and that any reduced sentence or suspension of sentence in the imposition of probation would depreciate the seriousness of the crime.

Perkins argues that the term "infirm" as used in IC 35–4.1–4–7 encompasses a condition of weakness or feebleness and does not encompass age. She asserts that the trial court could not consider the age of the victim as an aggravating circumstance.

IC 35–4.1–4–7(c)[3] lists factors that may be considered by the trial court as aggravating circumstances in determining what sentence to impose for a crime. However, the statute expressly provides that the criteria listed do not limit the matters the court can consider in determining the sentence. Furthermore, the evidence adduced at trial would support a finding that Mandy Lynn was physically infirm. Dr. Boaz testified that the child appeared to be suffering from malnutrition. In addition, Perkins and her sister-in-law testified that Mandy cried a lot, was unable to stand easily, couldn't keep food down and was an inactive child.

We find no error in the sentence imposed.

*Issue IV:*

Perkins' last argument is that the state failed to prove that she "knowingly" deprived Mandy of necessary medical care and therefore that there is insufficient evidence to sustain her conviction.

When reviewing the sufficiency of evidence, this court considers only the evidence most favorable to the state along with all reasonable inferences to be drawn therefrom in order to determine whether there is sufficient evidence of probative value from which a reasonable trier of fact could have found the existence of each element of the crime beyond a reasonable doubt. *Baum v. State* (1976), 264 Ind. 421, 345 N.E.2d 831; *Clark v. State* (1976), 265 Ind. 161, 352 N.E.2d 762. We will not weigh the evidence nor determine the credibility of the witnesses. *Robinson v. State* (1977), Ind., 365 N.E.2d 1218, *cert. den.* 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463, *reh. den.* 434 U.S. 1041, 98 S.Ct. 785, 54 L.Ed.2d 792; *Cowherd v. State* (1970), 253 Ind. 693, 256 N.E.2d 679.

While the state must sustain its burden of proof on each element of an offense charged, such elements may be established by circumstantial evidence and the logical inferences drawn therefrom. *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841; *Kondrup v. State* (1968), 250 Ind. 320, 235 N.E.2d 703. Because knowledge, like intent, is a mental state of the actor, the trier of fact must resort to reasonable inferences based on the examination of the surrounding circumstances to reasonably infer its existence. *Lisenko v. State, supra; Farno v. State* (1974), 159 Ind.App. 627, 308 N.E.2d 724. We find that the evidence, as set forth throughout this opinion, adequately supports the reasonable inference that Perkins was aware that she was depriving the child of necessary medical care.

Affirmed.

HOFFMAN and STATON, JJ., concur.

---

3. The section number is the official Indiana Code number. The statute may be found in Burns Indiana Statutes (1978 Ed.) at 35–50–1A–7(c). It reads as follows:

"(c) The court may consider these factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

(1) The person has recently violated the conditions of any probation, parole, or pardon granted him.

(2) The person has a history of criminal activity.

(3) The person is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility.

(4) Imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime.

(5) The victim of the crime was sixty-five [65] years of age or older.

(6) The victim of the crime was mentally or physically infirm.

(d) The criteria listed in subsections (b) and (c) of this section do not limit the matters that the court may consider in determining the sentence."