Freddie ARMOUR, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 883S276.

Supreme Court of Indiana.

July 3, 1985.

Kenneth T. Roberts, Indianapolis, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

DeBRULER, Justice.

This is a direct appeal from a conviction for neglect of a dependent, a class B felony, Ind.Code § 35-46-1-4 (Burns 1985

Repl.) and from a habitual offender determination. This case was tried before a jury. Defendant-Appellant was sentenced to a prison term of forty years.

Appellant raises five issues on appeal: (1) whether the evidence is sufficient to sustain appellant's conviction; (2) whether the trial court properly admitted appellant's tape-recorded statements into evidence; (3) whether the trial court properly refused appellant's tendered instructions numbered one through five; (4) whether the trial court properly admitted State's exhibits 9 and 10 into evidence at the habitual offender proceeding; (5) whether the trial court committed fundamental error by giving instruction number 28.

These are the facts which tend to support the determination of guilt. On January 10, 1983, Lynn Howard brought her three month old son to the Cumberland Clinic to be examined because her baby had not been eating for two or three days and he may have suffered a seizure a couple of days earlier. This clinic doctor testified that the baby looked small for his age, his head was somewhat larger than expected for his age, the veins on his head were prominent, and his eyes were slightly bulging. Since the baby experienced a seizure during the examination, the clinic doctor advised Ms. Howard to take her baby to Community Hospital to have the seizure treated.

During the examination at Community Hospital the baby was still having a seizure, was comatose, and unconscious. The mother told this emergency room staff physician that her baby had been shaking intermittently for the past four days. This doctor described the baby as "generally cachectic in appearance, an almost malnourished, starvation sort of appearance."

The Community Hospital doctors determined that this baby had a subdural hematoma caused by a trauma to the baby's head which occurred within the previous weeks. The baby's symptoms included an enlarged head, a bulging soft spot, extraordinary lethargy, bizarre jerking movements, unresponsive eyes, extremely thin and weak legs, weakness of the facial nerves, and the baby's development at three months was less than or equal to that of a normal newborn infant. The doctors testified that the baby would not have looked healthy and normal to a person of usual intelligence. A neurological surgeon testified that a subdural hematoma in a child of three months could be caused by injury, such as a fall or blows, or by shaking the baby. He also testified that it was too early to determine the effects of the brain damage which the baby now has.

Appellant, father of the baby, lived with Ms. Howard and the baby. He admitted that he was primarily responsible for his baby's care and was with his baby ninety percent of the time. His baby was vomiting and having tantrums for two weeks before receiving any medical treatment. Appellant knew that his baby's vomiting of food recently fed was a symptom of infantile starvation. Appellant recognized that his baby had suffered a seizure several days before the mother sought medical attention. In addition, his baby was not eating, was constipated and, in the appellant's own words, "looked bad" the day before his son was brought to the clinic. Appellant admitted that he had not sought medical treatment for his son. He told the police "[i]f he got neglected, it's neglected on my part for judging or not judging, but physical abuse, no, see, it's neglect on my part or something." Appellant also admitted to shaking his baby when his son cried too much.

### I.

Appellant argues that the evidence was insufficient to sustain his conviction for neglect of a dependent because the element of knowledge or intent was not proved by the State. He maintains that the State never proved that he knew that his baby's health or life was endangered or that he intended harm to his baby. Appellant contends that he did not realize the severity of the situation and felt that he was taking sufficient measures to protect the baby's health.

The criminal offense of neglect of a dependent as charged here required the State to prove that appellant had care of a dependent, whether assumed voluntarily or because of legal obligation, and knowingly or intentionally placed the dependent in a situation which endangered the dependent's life or health, and that serious bodily injury resulted. Ind.Code § 35–46–1–4 (Burns 1985 Repl.). The specific conduct alleged was the failure to seek timely medical care for his son. We conclude that the evidence and reasonable inferences therefrom satisfied the State's burden of proving the requisite state of mind beyond a reasonable doubt.

■ Indiana Code § 35–41–2–2 (Burns 1985 Repl.) defines "knowingly" as conduct in which the actor is aware of a high probability that he is so engaged. However, the Indiana Court of Appeals disagrees as to the definition of "knowingly" in our child neglect statutes. One district applies an objective standard wherein the State need only prove that defendant-caretaker was aware of the facts which would alert a reasonable caretaker under similar circumstances to take affirmative action to protect the child. *Smith v. State* (1980), Ind. App., 408 N.E.2d 614. Other districts correctly apply the subjective standard mandated by our culpability definiting statute. *McMichael v. State* (1984), Ind.App. 471 N.E.2d 726; *Ware v. State* (1982), Ind.App., 441 N.E.2d 20; *Perkins v. State* (1979), 181 Ind.App. 461, 392 N.E.2d 490. We now hold that the level of culpability required when a child neglect statute requires knowing behavior is that level where the accused must have been subjectively aware of a high probability that he placed the dependent in a dangerous situation.

■ Our standard for reviewing sufficiency claims has been firmly established. On review, we do not weigh the evidence or judge the credibility. We are constrained to consider only that evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier

of fact, the verdict will not be overturned. *Perkins*, 392 N.E.2d at 495. In the case at bar, the evidence most favorable to the State supports the jury's conclusion that appellant knowingly endangered the health or life of his dependent son by not seeking timely medical care for his son. Despite appellant's admitted knowledge that his son exhibited the aforementioned symptons recited in the statement of facts, he did not seek medical treatment for his son for at least two weeks.

## II.

Appellant claims that the trial court erred in overruling his motion to suppress State's Exhibit 4 and in admitting State's Exhibit 8 over his objection. Exhibit 4 is a tape-recorded statement based upon a noncustodial police interview of appellant held on January 10, 1983, and Exhibit 8 is a tape-recorded statement based upon an interrogation of appellant held on January 12, 1983, the date of his arrest. Appellant presents two arguments: first, the incriminating statements contained in Exhibit 4 were not voluntarily made, and, second, Exhibit 8 was inaudible and therefore the indiscernible content could have confused the jury.

The tape-recorded confession which comprises Exhibit 4 was based upon a police interview conducted at police headquarters. After the police were notified that appellant's baby was hospitalized with a traumatic brain injury, the police went to appellant's home to ask whether appellant would discuss his baby's condition. Appellant accompanied them to the police station for questioning. Appellant was advised of his constitutional rights before questioning, stated that he understood each of these rights, and then signed the waiver form.

At the time appellant made his statement the police knew only that his baby was hospitalized for a traumatic head injury which had occurred within the previous two weeks, but were unaware of the exact condition or prognosis of his baby. The police were investigating the possibility of both battery, based upon the baby's injury, and

neglect, based upon the length of time which elapsed between appellant's awareness of his son's poor health and the provision of medical care for his son.

Appellant claims that his confession was not voluntarily made because the police deceived him as to the true purpose of the questioning since he believed that he was merely denying battery charges and was unaware of potential neglect charges. He maintains that since he knew that he had not battered his son, he agreed to the questioning. Appellant also claims that his waiver of the *Miranda* warnings was based upon the same police deception.

*Miranda* requires that custodial interrogations be proceeded by procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The two relevant warnings are the right to remain silent, designed to inform the accused of the privilege, and notice that any statements made may be used as evidence against the accused at trial, designed to forewarn the accused of the consequences of relinquishing the privilege. If the accused is warned that anything that he says will or may be used against him at his trial, the effect generally is to render admissible any confession made by him thereafter. *Roell v. State* (1982), Ind., 438 N.E.2d 298.

■ Since the advisements of rights were in accordance with the *Miranda* requirements, the issue remains whether appellant intelligently and voluntarily waived his rights before he made his statement. The legal standard to be applied in determining whether an accused, who has been properly advised of his rights, has voluntarily waived his rights is the same as that used in the pre-*Miranda* coerced confession cases. The question is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises, or other improper influences. *Nacoff v. State* (1971), 256 Ind. 97, 267 N.E.2d 165. The employment of deception is improper.

*Layton v. State* (1973), 261 Ind. 251, 301 N.E.2d 633.

■ While *Miranda* indicated that the police should not threaten, trick, or cajole an accused into making a statement, *Miranda* does not require that an accused be specifically informed by the interrogator of the precise nature of the potential charges for which the accused is being questioned. More recently, the Supreme Court has indicated that the police need not inform a suspect prior to questioning what the precise nature of the charges may be. *Berkemer v. McCarty* (1984), — U.S. —, 104 S.Ct. 3138, 82 L.E.2d 317. In *Berkemer*, the Court refused to accord the *Miranda* procedural safeguards based upon a felony-misdemeanor distinction since the police are often unaware at the time of arrest whether the person committed a misdemeanor or a felony. The Court reasoned that the nature of the offense is oftentimes dependent upon circumstances unknown to the police or events which have not yet occurred. It would therefore be unreasonable to require police to determine the nature of the offense as a condition precedent to proper police interrogation procedure. *Berkemer*, 104 S.Ct. at 3146.

■ Similarly, it would be unreasonable to require that police inform suspects prior to questioning at the investigatory stage as to the nature of all potential charges since there are innumerable unknown factors which may affect the resulting formal charge, if any. The impracticality of requiring police to state the precise nature of the charge to which an investigation may lead does not mean that the suspect is to be relegated to total ignorance of the subject matter of the interview or interrogation. The suspect should be informed of the reason for the investigation or the incident which gave rise to the interrogation so that the suspect can make a knowing and intelligent decision whether to forgo the privilege against self-incrimination. However, a knowing and intelligent decision to waive *Miranda* rights does not require that the police provide the suspect with that quantum of knowledge which an attorney would

require before rendering legal advice. *United States v. Anderson* (D.C.1976), 533 F.2d 1210.

■ In the case at bar, appellant did validly waive his *Miranda* rights and make the incriminating statements. He knew the reason for the investigation before those events. No deception was employed, and there was no threat or coercion. The statements were therefore properly admitted into evidence against him at trial.

We reject appellant's claim as to the inaudibility of his tape-recorded statement contained in State's Exhibit 8. Not only did appellant not make a contemporaneous objection at trial to this exhibit's inadmissibility on an inaudibility ground, but appellant also failed to present an inaudibility issue in his motion to correct errors.

### III.

Appellant argues that the trial court committed reversible error by refusing to give his tendered instructions numbered one through five. He maintains that these instructions were correct statements of the law and were not otherwise adequately covered by other court instructions.

■ In considering whether error resulted from the refusal of tendered instructions, we must determine whether: (1) the tendered instruction correctly states the law, (2) there is evidence in the record to support the giving of the instruction, and (3) the substance of the tendered instruction is covered by other instructions which were given. *Richey v. State* (1981), Ind., 426 N.E.2d 389. A comparison of appellant's tendered instructions with the preliminary instructions given by the trial court shows that the preliminary instructions adequately covered the substance of appellant's refused tendered instructions. Since appellant has not satisfied each component of the aforementioned test, there was no trial court error in refusing his tendered instructions.

■ Defense tendered instruction number one recites that the facts may only be determined from the evidence based upon in-court testimony. Preliminary instruction number one recites that the jury, as the exclusive finder of fact, may determine the facts only from the evidence presented in court and must disregard any external information. Preliminary instruction number eleven recites that any comments or remarks made by the court or by counsel, including the opening and closing arguments of counsel, should not be considered by the jury as evidence. The substance of defense tendered instruction number one was clearly covered by preliminary instructions number one and eleven.

■ Defense tendered instruction number two recites that the jury determines whether defendant is guilty. It also states that the defendant is presumed innocent and may not be found guilty if there is a reasonable doubt. If the State proves beyond a reasonable doubt all the material allegations of the charge, then the jury may find the defendant guilty. Preliminary instructions numbers four, five, and six cover the substance of defense tendered instruction number two. Preliminary instruction number four recites that the burden is on the State to prove to each juror beyond a reasonable doubt every material allegation of the crime charged before defendant may be convicted. Preliminary instruction number five states that the presumption of innocence accorded defendants continues throughout the entire trial. The definition of reasonable doubt is recited in preliminary instruction number six.

■ Defense tendered instruction number four states that the law presumes defendant to be innocent of the crime charged and this presumption continues throughout the trial. It further states that the jury cannot find defendant guilty unless the evidence so satisfies them beyond a reasonable doubt. Once again, preliminary instruction number five, regarding the presumption of innocence, and preliminary instruction number six, which defines the reasonable doubt standard, cover the substance of defense tendered instruction number four.

██ Defense tendered instruction number five recites that evidence based merely on suspicion, opportunity, probability, conjecture, speculation, and unreasonable inferences is not sufficient evidence upon which to convict defendant. Preliminary instruction number six, wherein the reasonable doubt standard is defined, states that reasonable doubt is not based on imagination or speculation and thus sufficiently covers the substance of defense tendered instruction number five.

 There was no preliminary instruction which covered the substance of defense tendered instruction number three regarding circumstantial evidence. However, where there is both direct and circumstantial evidence of guilt, the trial court is not required to instruct the jury on circumstantial evidence. *Haynes v. State* (1982), Ind., 431 N.E.2d 83. Since a confession is deemed to be direct evidence, *Cox v. State* (1985), Ind., 475 N.E.2d 664, the trial court did not err in refusing defense tendered instruction number three.

## IV.

Appellant claims that the trial court improperly admitted State's Exhibits 9 and 10 into evidence as proof of his predicate felony convictions at the habitual offender proceedings. Appellant maintains that the felony conviction records which form the basis of these exhibits show that the judges did not have authority to act and that such jurisdictional defects may be challenged in the habitual offender proceedings.

 Affirmative defenses challenging the validity of predicate felony convictions must be substantiated on the face of the proof offered by the State to establish such convictions. *Cf. Edwards v. State* (1985) Ind., 479 N.E.2d 541. Neither exhibit in this case satisfies this requirement. Rather, because of the ambiguity apparent on the face of these two exhibits, other reasons consistent with jurisdiction could explain the procedures underlying these two convictions.

Exhibit 9 is comprised of the following four documents:

(1) An amended 1972 information for first-degree burglary;

(2) A docket sheet, dated December 18, 1972, which states that court was convened before John B. Wilson, presiding judge, and Robert Hughes, special judge. The document recites that the court finds defendant guilty in accordance with his guilty plea, and is signed by both Wilson and Hughes;

(3) A docket sheet which states that court was convened before John B. Wilson, presiding judge, and recites that defendant is to be imprisoned for one to five years. It is signed by Wilson and dated January 18, 1973; and

(4) A commitment order, dated January 18, 1973, ordering defendant to a one to five-year term of imprisonment, signed by Robert Hughes, special judge.

Exhibit 9 shows that entry of the guilty plea, finding of guilty, and the commitment order were signed by both the presiding judge and the special judge. What is unclear is the role played by Hughes and under what authority he acted. Resolution of these questions requires more information and therefore there is no presumption of jurisdictional invalidity.

Exhibit 10 is comprised of the following four documents:

(1) A 1975 information for possession of a controlled substance;

(2) An unsigned docket sheet dated November 12, 1975, which recites that court was convened before both Mark Shaw, judge *pro tempore*, and Larry Champion, judge *pro tempore*, and which states that the court accepted defendant's guilty plea;

(3) A docket sheet, dated February 11, 1976, which states that court was convened before both John B. Wilson, presiding judge, and Larry Champion, special judge, and which recites that defendant is sentenced to two years' imprisonment. It is signed by both Champion and Wilson; and

(4) A commitment order dated February 11, 1976, wherein John B. Wilson, special judge, ordered that defendant be imprisoned for two years.

No order of appointment is discernible from the face of the record. Moreover, the face of the record does not indicate that one judge appointed another. Once again the ambiguities apparent from the record require additional information for their resolution and thus do not raise a presumption of jurisdictional invalidity.

## V.

 Appellant claims that the trial court committed fundamental error by giving instruction number 28 which he maintains invaded the province of the jury by mandating the jury to convict him. The challenged instruction number 28 recites that if the State does not prove the allegations of habitual offender status, the jury must find the defendant not guilty, and, conversely, if the State proves the allegations, the jury must find the defendant guilty of being a habitual offender.

This instruction is phrased in alternatives and thus does not bind the jury to one course of action, *Maisonet v. State* (1983), Ind., 448 N.E.2d 1052, but rather simply states that if the jury has a reasonable doubt of guilt it must acquit, but that if it has no such reasonable doubt it must convict. *Taylor v. State* (1981), Ind., 420 N.E.2d 1231, 1236. In addition, this challenged instruction was accompanied by the following qualifying instructions:

(1) Instruction number 25 recited the statutory allegations of the habitual offender count;

(2) Instruction number 1 informed the jury that they were the exclusive finders of fact and that the determination of facts is only based upon evidence presented in court;

(3) Instruction number 4 recites that the State has the burden to prove beyond a reasonable doubt every material allegation; and

(4) Instruction number 5 recites that the presumption of innocence accorded defendants continues throughout the entire trial.

Instruction number 28 does not support the conclusion that the giving of it was fundamental error. Similar to the *Taylor* instruction, which was also challenged on the ground that it invaded the province of the jury, this jury was given the aforementioned additional instructions which qualified any mandate to the jury based upon instruction number 28. *Barker v. State* (1982), Ind., 440 N.E.2d 664. Thus, an objection to this instruction at trial was necessary. *Taylor* 420 N.E.2d at 1236.

The trial court is affirmed in all respects.

Judgment affirmed.

GIVAN, C.J., and PRENTICE and PI-VARNIK, JJ., concur.

HUNTER, J., not participating.