**GARIUP CONSTRUCTION COMPANY, INC., Appellant (Defendant Below),**

v.

**Andrew W. FOSTER, Appellee (Plaintiff Below).**

No. 75S03–8803–CV–288.

Supreme Court of Indiana.

March 2, 1988.

⚷136(14)

⬅🗝**1064.1(2)**

David L. Zoss, Stults, Custer, Kutansky & McLean, Valparaiso, Fred M. Stults, Jr., Stults, Custer, Kutansky & McLean, Gary, for appellant.

Timothy J. Hartzer, Parker & Jaicomo, John C. Hamilton, P.C., South Bend, for appellee.

ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

Following a jury trial, plaintiff-appellee Andrew W. Foster (Foster) was granted a judgment of $150,000.00 against the defendant-appellant Gariup Construction Company, Inc. (Gariup). The case arose out of a Christmas party on December 17, 1982, a traditional event hosted by Gariup for employees and others on company premises. Gariup furnished food and refreshments, including alcoholic beverages. The Gariup office manager, Paul Orner, an employee for over fifteen months, attended the party and drank three or four beers between approximately 4:30 and 10:00 p.m. During the next 30–40 minutes, Orner consumed between six and eight shots of 80–proof whiskey while participating in a game of "Quarters" in which players would attempt to bounce a quarter off the table into a cup and, if successful, would designate another player to drink a shot of whiskey. He left the party at approximately 11:00 p.m. or later, intending to drive to pick up his wife from work approximately four miles away. The Orner residence was over ten miles from the Gariup premises. At about 11:40 p.m., Orner was observed driving eastbound on a 6–lane interstate highway, weaving through the eastbound lanes and median strip. He drove across the median into the oncoming lanes, continued driving eastbound in the westbound lanes, and struck Foster's vehicle head-on, resulting in serious spinal injury to Foster. During the state police officer's accident investigation, Orner fell asleep in the state police car. He subsequently entered a plea of guilty to operating a vehicle while intoxicated. Foster's original action named Orner and Gariup as defendants. The claim against Orner was thereafter dismissed after Foster received Orner's $25,000.00 liability insurance policy limit and executed a covenant-not-to-sue Orner.

The Court of Appeals reversed and remanded for a new trial, concluding that the statutory provision, Ind.Code § 7.1–5–10–15 (1982),[1] necessarily precludes a common law negligence claim. *Gariup Const. Co., Inc. v. Foster* (1986), Ind.App., 497 N.E.2d 924. In conjunction with our decision in *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217, we grant transfer herein.

From the numerous issues which Gariup presents for review, we consolidate and restate the dispositive issues as follows: 1) common law negligence action, 2) statutory violation, 3) breathalizer test, 4) other in-

---

1. Presently codified at Ind.Code § 7.1–5–10–15(a) (Supp.1987).

structions, 5) requests for admissions, and 6) summary judgment.

### 1. Common Law Negligence Action

Gariup contends that the trial court erred in instructing the jury upon a common law negligence theory. Gariup argues that any such theory is superseded by Ind.Code § 7.1–5–10–15, which proscribed the furnishing of alcoholic beverages to intoxicated persons. In *Picadilly*, we expressly recognized that the statute does not preempt the common law, but rather designates certain minimal duties which do not thereby relieve persons from otherwise exercising reasonable care.

While the existence of the statute does not preclude the possibility of independent common law liability, the issue remains as to whether the instructions improperly authorized such common law liability in a purely social context. Gariup argues that absent an "actionable relationship" between Foster and Gariup, Indiana common law does not recognize any duty on the part of a social host to protect the general public from drivers intoxicated by the alcohol provided by the host.

Indiana courts have traditionally recognized that the existence of a common law negligence action requires judicial determination of "a duty on the part of the defendant in relation to the plaintiff." *Miller v. Griesel* (1974), 261 Ind. 604, 611, 308 N.E. 2d 701, 706. "The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty." *Neal v. Homebuilder's, Inc.* (1952), 232 Ind. 160, 169, 111 N.E.2d 280, 285 (citing *Union Traction Co. v. Berry* (1919), 188 Ind. 514, 520, 121 N.E. 655, 657).

Such determination is not without difficulty. We note the following observations from *Prosser & Keeton on Torts* § 53, at 357–59 (5th ed. 1984):

\* \* \* The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated. \* \* \* But it should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.

\* \* \* \* \* \*

Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.

While some states are presently expanding liquor liability to include gratuitous providers,[2] most courts continue to refuse to hold social hosts accountable for serving liquor to adults. *Prosser & Keeton on Torts, supra,* § 53, at 58–59 (Supp.1988).

Indiana law clearly recognizes the duty to refrain from providing alcoholic beverages to minors or intoxicated persons, and applies the duty to include non-commercial providers. Ind.Code §§ 7.1–5–7–8, 7.1–5–10–15. In *Brattain v. Herron* (1974), 159 Ind.App. 663, 674, 309 N.E.2d 150, 156, Judge Lowdermilk observed:

The Legislature has not seen fit to distinguish between a seller and a social provider of alcoholic beverages to a minor and it is our opinion that no such distinction would be either logical or equitable.

This reasoning was likewise applied to expressly recognize the statutory duty of a

**2.** *See McGuiggan v. New England Tel. & Tel. Co.* (1986), 398 Mass. 152, 496 N.E.2d 141; *Kelly v. Gwinell* (1984), 96 N.J. 538, 476 A.2d 1219; and

*Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity* (1971), 258 Or. 632, 485 P.2d 18.

social provider to refrain from giving alcoholic beverages to an intoxicated person. *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167.

■ Cognizant of our legislature's active and ongoing interest and participation in the development of public policy in this area,[3] this Court is unwilling to depart from the general rule followed in most jurisdictions, and we hold that common law liquor liability shall not be extended to the purely social host, except in cases involving a breach of a statutory duty.

In addition to the customary instructions regarding negligence, reasonable care, proximate cause, etc., the jury in the present case was instructed that Gariup had a duty to sufficiently supervise the guests at the party, and to not allow the consumption of alcoholic beverages by an intoxicated guest. Unfortunately, in advising these duties, the instructions ascribed them generally to persons hosting a party and providing intoxicating beverages for guests on a self-serve basis.

■ It is the exclusive province of the court to determine whether the relation existing between the parties gives rise to a duty to exercise care. *Miller v. Griesel, supra; Neal v. Homebuilders, Inc., supra.* Whether the duty arose out of the relationship between social host and guest, or out of some other relationship, is not a factor relevant to the jury's factual determination as to whether the duty was breached. Thus, while we refuse to expand common law liquor liability as related to the purely social host, we find such reference in the instructions to be harmless error. The crucial issue is whether, as a matter of law, Gariup had a duty of reasonable care under the individual facts before us.

In this analysis, general principles from the *Restatement (Second) of Torts* are helpful:

§ 302 Risk of Direct or Indirect Harm

A negligent act or omission may be one which involves an unreasonable risk of harm to another through either

(a) the continuous operation of a force started or continued by the act or omission, or

(b) the foreseeable action of another, a third person, an animal, or a force of nature.

§ 302A Risk of Negligence or Recklessness of Others

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.

§ 308 Permitting Improper Persons to Use Things or Engage in Activities

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

§ 317 Duty of Master to Control Conduct of Servant

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

---

**3.** *See* Ind.Code § 7.1–5–7–8 (enacted in 1982, limited the civil liability of educational institutions for furnishing alcoholic beverages to minors); Ind.Code § 7.1–5–10–15(b) (enacted in 1985, recognized reasonable belief of customer's intoxication as defense to civil action for refusal to serve alcoholic beverages); and Ind.Code § 7.1–5–10–15.5 (enacted in 1986, asserted elements of actual knowledge and visible intoxication as prerequisites to civil actions for furnishing liquor to intoxicated persons, effective as to actions accruing after March 31, 1986.)

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

§ 318 Duty of Possessor of Land or Chattels to Control Conduct of Licensee

If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person so as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control.

 We view the issue not merely as a question of Gariup's duty to control Orner's conduct at the party, but rather as whether Gariup had a duty to exercise reasonable care such as to entitle the jury to determine whether Gariup was negligent under the circumstances in supervising the activities at the party, failing to stop or discourage the drinking game involving Orner, and continuing to furnish alcoholic beverages for Orner.

In the present case, it is uncontroverted that Gariup conducted the party; it occurred on Gariup's premises; Gariup furnished the alcoholic beverages; Gariup's president was present during the party; the "Quarters" drinking game occurred; and significantly, the intoxicated person, Orner, was a Gariup employee. While there may be a factual question as to whether the party was within the scope of employment, it is readily apparent that Gariup, as Orner's employer, had significantly greater influence and control over Orner than Gariup would have had over a non-employee, social guest.

From the facts and circumstances unique to the present case, we conclude that as between Gariup, Orner, and third-person motorists potentially exposed to significant danger in the event of Orner's drunk driving, there existed a relationship which as a matter of law gave rise to a duty on the part of Gariup to exercise ordinary and reasonable care. While incorrect in naming the social host/guest relationship as the source of such duty, the trial court was correct in recognizing the existence of duty and permitting the jury to determine whether Gariup exercised reasonable care in supervising the party and enabling Orner to participate in the drinking game and to become inebriated.

We find no reversible error on this issue.

### 2. Statutory Violation

Gariup contends that there was insufficient evidence at trial upon the required elements to permit the case to go to the jury on a theory that Gariup violated Ind. Code § 7.1–5–10–15, which provided:

It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated.

Violation of this statute is a class B misdemeanor. Ind.Code § 7.1–5–1–8.

 Gariup argues that violation of the statute should require proof that the recipient was visibly intoxicated and that the person furnishing the beverage had actual knowledge of the recipient's intoxication. We agree with Gariup that to prove violation of the statute, the provider's knowledge must be shown by a subjective standard, not an objective one, and that constructive knowledge will not suffice to prove such violation.

 The element of knowledge required to constitute a violation of the criminal statute is determined by Ind.Code § 35–41–2–2(b):

A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

The culpability requirement for conduct engaged in "knowingly" is also satisfied by

conduct engaged in "intentionally." *Trevino v. State* (1981), Ind.App., 428 N.E.2d 263. Ind.Code § 35–41–2–2(a) states:

A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.

Therefore, violation of the misdemeanor statute proscribing furnishing alcoholic beverages to an intoxicated person requires proof that the provider either had as his conscious objective, or was aware of a high probability, that he was providing alcoholic beverage to an intoxicated recipient.

▮ Determination of an actor's knowledge requires the trier of fact to resort to reasonable inferences based upon examination of surrounding circumstances to reasonably infer its existence. *Perkins v. State* (1979), 181 Ind.App. 461, 392 N.E.2d 490. Knowledge may be inferred from the facts and circumstances. *Williams v. State* (1979), 271 Ind. 656, 395 N.E.2d 239. Proof that an alcohol provider knew of the recipient's intoxication may be made by indirect or circumstantial evidence. *Ashlock v. Norris, supra; Elsperman v. Plump* (1983), Ind.App., 446 N.E.2d 1027.

▮ However, proof of the statutory violation cannot be shown merely by evidence that the provider, in the exercise of reasonable care, should have known of the recipient's intoxication. The statutory requirement that the provider "knows that the other person is intoxicated," cannot be satisfied by evidence of such constructive knowledge.

▮ In advising the jury of the statutory prohibition against furnishing an alcoholic beverage to an intoxicated person, Instruction 12 used the language of the statute, including the requirement "if the person knows the other person is intoxicated." This instruction did not misinform the jury by permitting constructive knowledge as sufficient to violate the criminal statute.

▮ The trial court's general Instruction 16, regarding the elements of plaintiff's theories of recovery, contained no express reference to statutory violation. While characterized by Gariup as containing a statutory violation count, the issues presented by this instruction did not expressly require determination of whether the statute was violated. Rather, the instruction related to principles of common law negligence, as discussed in Issue 1 above. In determining whether Gariup exercised ordinary and reasonable care under the circumstances, it was therefore entirely appropriate for the jury to consider whether Gariup "knew or should have known" of Orner's intoxication.

▮ Because the statutory violation was not the exclusive basis for liability, and because the evidence was sufficient to sustain the theory of common law negligence, it is not necessary for us to review the evidence to determine whether there was sufficient evidence of Foster's actual knowledge of Orner's intoxication. Since there is evidence to sustain the common law theory of liability, we will uphold the general verdict. *In re Estate of Fanning* (1975), 263 Ind. 414, 333 N.E.2d 80.

### *3. Breathalizer Test*

▮ Gariup contends that it was error to admit testimony regarding Orner's breathalizer test results, and to instruct the jury regarding the Motor Vehicle Code standard for prima facie evidence of intoxication.[4] After the collision, Orner was taken to the Porter County Sheriff's Department where an attempt was made to administer a breathalizer test. An inadequate breath sample may have been taken. It indicated an alcohol level of at least .16%. Medical testimony was permitted to relate the breathalizer results to

**4.** Among the provisions of the Motor Vehicle Code are the following statutes:
"Prima facie evidence of intoxication" includes evidence that at the time of an alleged violation there was ten hundredths percent (.10%), or more, by weight of alcohol in the person's blood. Ind.Code § 9–11–1–7.

"Relevant evidence of intoxication" includes evidence that at the time of an alleged violation there was at least five-hundredths percent (0.05%), but less that ten hundredths percent (0.10%), by weight of alcohol in the person's blood. Ind.Code § 9–11–1–7.5.

Orner's level of intoxication during the time before he left the party.

Gariup argues that the motor vehicle standard for intoxication is not relevant to prove Gariup's knowledge of Orner's intoxication. We find that the breathalizer test results, when coupled with the medical evidence explaining the significance of the results and the signs of intoxication which would probably have been apparent at the Gariup party, together were probative evidence. In view of other instructions, we do not find error.

■ Gariup also contends that the trial court erred in overruling its objection to plaintiff's questioning of Orner regarding the breathalizer test results. Any error is harmless as Gariup's expert witness Dr. Gladstone separately testified without objection to Orner's breathalizer test results. (R. 490–91)

### 4. Other Instructions

Gariup objects to various instructions given, and to the failure to give certain tendered instructions. To the extent such objections concern trial court Instructions 16, 17, 18, 19, and 26, and Gariup's tendered Instructions 3 and 4, the issues are addressed elsewhere in this opinion, and the trial court's actions were proper.

■ Gariup contends that the trial court erred in giving Instruction 8 regarding the duty of motorists to exercise ordinary care. Gariup's objection at trial was "that the thrust of the case at hand doesn't involve automobile negligence but involves a violation of a statute by the defendants." (R. 521) Instruction 6, given without objection by Gariup, referred to the contributory negligence defense. With the presence of the contributory negligence instruction, it was not error to give Instruction 8, which had the effect of advising the jury that Foster would be negligent only if found to have failed to exercise the care of an ordinarily prudent person under the same or like circumstances.

■ Gariup objected to Instruction 15, which explained that conduct of a corporate officer, employee, or agent acting within the scope of his authority is the act of omission of the corporation. While admitting that the instruction was a correct statement of law, Gariup contends that it improperly permitted the jury to infer "that anything that any employee learned at any time was imputable to Gariup." We disagree. The instruction did not purport to explain imputed corporate knowledge. Because we reject Gariup's contention that there is no common law liability outside of the statutory violation which required actual knowledge, we find that the giving of Instruction 15 was not reversible error.

■ In its tendered Instruction 6, Gariup sought to instruct the jury upon the issue of Orner's scope of employment at the time of the accident. This instruction was properly refused as beyond the issues at trial. Foster was not seeking to impose vicarious liability upon Gariup for Orner's negligent driving.

### 5. Requests for Admissions

■ Gariup contends that the trial court erred in reading to the jury its responses to certain requests for admissions. On this issue we adopt the following discussion from the decision of the Court of Appeals.

"Ind.Rules of Procedure, Trial Rule 36(B) states that '[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.' The record does not reflect a motion for withdrawal or amendment by Gariup.

"Gariup also argues that some of its responses did not constitute admissions. For the most part, Gariup stated that it was without knowledge to determine whether a certain request was inaccurate or incorrect. Pursuant to T.R. 36(A) a party may not make such a response without a further statement that reasonable inquiry has been made or that an inquiry would be unreasonably burdensome. Therefore, responses were properly deemed admissions and were conclusive in the action." *Gariup,* 497 N.E.2d at 927.

### 6. Summary Judgment

Gariup's claim that the trial court erred in denying its motions for summary judgment is posited upon legal contentions rejected in our discussions of Issues 1 and 2 above. The trial court did not err in denying summary judgment.

### Conclusion

Transfer is granted. The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

PIVARNIK, J., dissenting with opinion in which DeBRULER, J., concurs.

PIVARNIK, Justice, dissenting.

I must dissent to the majority opinion wherein it finds grounds to place responsibility on Gariup Construction Co., Inc., for the actions of Paul Orner. In *Picadilly,* the majority applied common law responsibility to a commercial dispenser of alcoholic beverages in spite of the fact the legislature had acted on the subject and established liability contrary to the position taken by the majority in *Picadilly* and in this case. In this case the majority now "cuts and fits" the statutory and the common law to arrive at a result that appears to satisfy their own "legislative theory" of what the law ought to be regarding the consumption and distribution of alcoholic beverages in our society.

The majority first holds it is unwilling to depart from the general rule followed in most jurisdictions and refuses to extend common law liquor liability to the purely social host except in cases involving a breach of statutory duty and then imposes this very liability on Gariup. Apparently, the majority differentiates Gariup from any other social host because of the fact he employed Orner and most of the other guests, plus the fact that Orner and some others played a game involving heavy drinking. There is no evidence that the host took part in or even knew of this foolish and deadly game. A similar philosophy was followed in *Picadilly* because the manner in which Picadilly served customers appeared to have much less supervision than most commercial dispensers. These distinctions cannot be found in the common law or the statutes.

Certainly no one would question the accuracy of the statistics the majority cites regarding the death and mayhem to unsuspecting citizens on our highways which irresponsible drunken drivers cause. In fact, more could be added to these statistics. Countless examples of broken homes, financial stress, abused families, and crime can be traced to the use and abuse of alcohol. We must accept the fact, however, that the use of alcohol is generally accepted by a very high percentage of persons in our society. The use and distribution of alcoholic beverages is very stringently controlled by the legislative and executive branches of our government.

The severe damage to Foster here was caused by *Paul Orner;* in *Picadilly,* Colvin was injured on the interstate highway as a result of *Deborah Brewer*'s drunken condition. The direct representation of the people in passing the laws by which we will be governed in this State, and the public policy of this State, is the responsibility of our legislature. That body fully controls the laws regarding the dispensing, use, and abuse of alcoholic beverages in Indiana. They have been very active in passing laws to seek out and punish those who abuse alcohol and cause severe injury and damage to others. The legislature has made it a criminal act for a commercial or social provider to furnish alcoholic beverages to a minor or a person who is visibly intoxicated. As a prerequisite to civil actions for furnishing liquor to intoxicated persons, Ind.Code § 7.1–5–10–15.5 requires there to be actual knowledge and visible intoxication. This statute became effective March 31, 1986. Ind.Code § 7.1–5–7–8, enacted in 1982, limited the civil liability of educational institutions for furnishing alcoholic beverages to minors. There are many other statutes and executive regulations controlling distribution. Ind.Code § 7.1–5–10–15(b), enacted in 1985, recognized reasonable belief of customers' intox-

ication as a defense to civil action for refusal to serve alcoholic beverages. To say the legislature has not acted in this area and established the public policy of this State is to ignore the facts clearly before us as an appellate court. Alcohol can be obtained in many places in this society and the abuser will find it and use it in any or all of them. If the law needs to be changed to more stringently sanction those who furnish alcohol to abusers, it should be done by the legislature and not by this court. I dissent and would deny transfer.

DeBRULER, J., concurs.