# FOR PUBLICATION



**FILED**
Dec 31 2014, 8:52 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**THOMAS A. CLEMENTS**
Law Office of Thomas A. Clements
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**TERENCE M. AUSTGEN**
**ELIZABETH M. BEZAK**
Burke Costanza & Carberry LLP
Merrillville, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ALFREDO D. RODRIGUEZ, as Permanent Guardian of the Person and Estate of Miriam Rodriguez, and Alfredo D. Rodriguez, Individually, )<br><br>Appellants-Plaintiffs, )<br><br>vs. )<br><br>UNITED STATES STEEL CORPORATION, )<br><br>Appellee-Defendant. ) | No. 45A04-1407-CT-350 |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Calvin D. Hawkins, Judge
Cause No. 45D02-1105-CT-55

**December 31, 2014**

**OPINION – FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Alfredo Rodriguez, individually and as permanent guardian of the person and estate of Miriam Rodriguez, appeals the trial court's grant of summary judgment in favor of United States Steel Corporation ("U.S. Steel") on Alfredo's negligence claim. Alfredo presents three issues for our review, but we address only one dispositive issue, namely, whether the trial court erred when it concluded that U.S. Steel did not owe a duty to Miriam.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At approximately 6:10 a.m. on January 21, 2011, Dana Faught, a longtime U.S. Steel employee,[1] drove his personal vehicle eastbound on Central Avenue in Gary, Indiana, when he crossed the center line and collided head on with Miriam, who traveled westbound. Faught has no memory of the collision and assumes that he fell asleep just before impact. Miriam sustained severe, permanent injuries.

When the collision occurred, Faught was traveling home from a shift at U.S. Steel, where he had worked as a labor team leader in the eighty-four-inch mill. Although Faught was actually scheduled to work eight-hour day shifts at U.S. Steel, his supervisor, Dave Best, allowed Faught to make his own hours. Before his collision with Miriam, Faught had worked an approximately eleven-hour shift, which began at 7:04 p.m. on January 20 and ended at 5:51 a.m. on January 21.[2] These hours were typical for Faught,

---

[1] Faught has since retired.

[2] These times indicate when Faught arrived at and left from U.S. Steel, respectively. As a result, U.S. Steel disputes whether Faught actually worked the entire duration he was on U.S. Steel's premises.

2

as he had worked similar hours, five to six days per week, for about three years. Best would approve Faught's hours after the fact.

Faught, did not, however, arbitrarily choose the hours he worked. He opted to work nights because the labor team that he oversaw, which performed maintenance tasks such as delivering supplies and servicing equipment, could accomplish more at night than during the day, when the mill was more crowded. Further, U.S. Steel did not employ a specific, designated team to complete labor work. Instead, the labor team was staffed entirely by employees who volunteered for overtime after they had completed their scheduled shifts. More labor work was available than volunteers, and Faught worked the hours necessary to complete the required tasks. Indeed, U.S. Steel also employed another labor team leader, and she worked the same hours as Faught. Other than periodic cuts to overtime, U.S. Steel did not have a policy that limited employee hours or regulated how many consecutive days an employee could work. U.S. Steel also did not offer training on employee fatigue.

Despite averaging four to five hours of sleep per night—Faught slept only four-and-a-half hours before his January 20-21 shift—Faught never had any issues with his work schedule, and he never asked for a reduction in hours. Further, Faught had never felt fatigued at work and had not previously fallen asleep while driving. And, moreover, Faught stated in his deposition that, if he ever were to feel fatigued at work, he could take a break whenever he wanted.

---

However, we construe the facts and inferences therefrom in the light most favorable to the nonmovant. See Markley Enterprises, Inc. v. Grover, 716 N.E.2d 559, 564 (Ind. Ct. App. 1999).

Based on these facts, Alfredo filed a negligence suit against Faught on May 20, 2011,[3] which he amended to include U.S. Steel on August 24, 2012. Alfredo's complaint against U.S. Steel alleged that it had acted negligently when it "allowed and/or permitted . . . Faught . . . to drive an automobile on his commute" after it permitted Faught "to work long and excessive hours on consecutive days" when it knew or should have known "that such schedule would make [Faught] overly tired and unable to safely drive home without becoming drowsy[] and[,] therefore[,] a hazard to other motorists on his route home . . . ." Appellant's App. at 14-15.

After it filed an answer and affirmative defenses on October 2, U.S. Steel moved for summary judgment on December 26, 2013. U.S. Steel argued that it did not owe Miriam a duty, but, even if it did, it neither breached that duty nor was the proximate cause of Miriam's injuries. After a hearing held on July 3, 2014, the trial court entered a general order granting summary judgment in favor of U.S. Steel and against Alfredo. This appeal ensued.

**DISCUSSION AND DECISION**

Alfredo contends that U.S. Steel owed third-party motorists, and, therefore, Miriam, a duty when it permitted Faught to work long hours for several consecutive days without any policy or training to combat employee fatigue. Consequently, he argues, the trial court erred when it entered summary judgment in favor of U.S. Steel. We disagree.

To recover on a negligence claim, a plaintiff must establish three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) injury to the

---

[3] The parties stipulated to the dismissal of Faught on March 28, 2014, and he is not a party to this appeal.

4

plaintiff resulting from the defendant's breach.  Countrymark Coop., Inc. v. Hammes, 892 N.E.2d 683, 688 (Ind. Ct. App. 2008), trans. denied.  "A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim."  Id.  "Absent a duty, there can be no breach of duty and no recovery in negligence."  Mishler v. State, 730 N.E.2d 229, 231 (Ind. Ct. App. 2000).  Thus, we need address only the issue of whether U.S. Steel owed Miriam a duty to exercise reasonable care.  Id.

As our supreme court has explained:

The determination of whether a duty exists is generally an issue of law to be decided by the court.  To decide whether a duty exists, a three-part balancing test developed by this Court can be a useful tool.  This test, first enunciated in Webb v. Jarvis, 575 N.E.2d 992 (Ind. 1991), balances three factors:  (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.  Notwithstanding the helpfulness of the Webb test in many situations, a precise formulation of the basis for finding a duty has proven quite elusive.

. . . But it should be recognized that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.  No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.

Pfenning v. Lineman, 947 N.E.2d 392, 398 (Ind. 2011) (some citations and quotations omitted).

Perhaps because "the basis for finding a duty has proven quite elusive," id., this court has applied the Webb balancing test in varied, and sometimes conflicting, ways, see, e.g., id. at 398-401 (discussing cases); Goldsberry v. Grubbs, 672 N.E.2d 475, 478 (Ind. Ct. App. 1996) (discussing cases), trans. denied.  Nevertheless, our supreme court

5

has continued to apply the Webb balancing test in situations where, as here, "the element of duty has not already been declared or otherwise articulated." Yost v. Wabash College, 3 N.E.3d 509, 515 (Ind. 2014) (quoting Northern Ind. Pub. Serv. Co. v. Sharp, 790 N.E.2d 462, 465 (Ind. 2003)). Thus, we apply Webb here.

### Relationship Between the Parties

"A duty of reasonable care is not, of course, owed to the world at large, but arises out [of the] relationship between the parties." Clary v. Dribble, 903 N.E.2d 1032, 1038 (Ind. Ct. App. 2009). This inquiry focuses on "whether or not the defendant . . . owes a duty to the particular plaintiff." Ousley v. Bd. of Comm'rs, 734 N.E.2d 290, 293 (Ind. Ct. App. 2000), trans. denied.

Miriam and U.S. Steel had no direct relationship. Thus, Alfredo relies on Gariup Construction Co. v. Foster, 519 N.E.2d 1224 (Ind. 1998), a dram shop case, to establish a relationship between U.S. Steel and Miriam by way of the collision between Faught and Miriam. Gariup held that an employer owed a duty of reasonable care to a third-party motorist, injured by the employer's intoxicated employee after a holiday party, where the employer had hosted the party on its premises, supplied alcohol, and allowed a drinking game to occur. Id. at 1229. Alfredo analogizes the situation here to Gariup and maintains that U.S. Steel has sufficient control over its employees' schedules to overwork them, which produced an impaired driver who injured a third-party motorist. In other words, Alfredo reasons that, like the employer in Gariup, U.S. Steel placed a dangerous instrumentality—Faught—in motion, which created a relationship between U.S. Steel and Miriam.

But working hours do not necessarily affect a person in the same way that alcohol does. While significant consumption of alcohol, in itself, inevitably leads to impairment, many factors other than long-working hours may contribute to fatigue—for instance, off-duty activities, quantity and quality of sleep, medical conditions and medication, and the length of the employee's commute—over which employers have no control. Indeed, Faught testified at his deposition that he slept only four-and-a-half hours before his eleven-hour, January 20-21 shift, which was fairly standard for him. Moreover, although Faught's hours were largely determined by the amount of work that his team needed to complete, he could take breaks from his work if and when he became tired. This is not the sort of "influence and control as contemplated in Gariup." Clary, 903 N.E.2d at 1040. We cannot say that U.S. Steel either knew or should have known that Faught was fatigued such that he could endanger third-party motorists. Thus, we decline to extend Gariup here, and we hold that the relationship factor of the Webb test favors U.S. Steel.

### Foreseeability

As our supreme court explained in Webb, 575 N.E.2d at 997:

> In analyzing the foreseeability component of duty, we focus on whether the person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable. The duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty.

In the context of the duty analysis, the foreseeability component should not be narrowly applied. See Estate of Heck ex rel. Heck v. Stoffer, 786 N.E.2d 265, 269 (Ind. 2003). Rather, we must consider the "totality of the circumstances." Kroger Co. v. Plonski, 930 N.E.2d 1, 7 (Ind. 2010) (quotations omitted). Doing otherwise "would eviscerate the

7

proximate cause element of negligence altogether," which looks to the foreseeability of an injury based on the specific facts of a case. Humphrey v. Duke Energy Ind., Inc., 916 N.E.2d 287, 291 (Ind. Ct. App. 2009) (quoting Goldsberry, 672 N.E.2d at 479 (Ind. Ct. App. 1996), trans. denied). Therefore, we frame the issue of foreseeability here broadly and construe all facts and inferences in favor of Alfredo, the nonmovant. As a result, we hold that this factor favors Alfredo: a third-party motorist could be a reasonably foreseeable victim of an injury inflicted by an employee suffering from work-induced fatigue.

## Public Policy

The public-policy prong of the Webb test strongly disfavors Alfredo. The focus of this factor is on "who is, or should be, in the best position to prevent an injury and how society should allocate the costs of such injury." Cox v. Stoughton Trailers, Inc., 837 N.E.2d 1075, 1081 (Ind. Ct. App. 2005).

Here, Faught, not U.S. Steel, was in the best position to prevent the injury to Miriam. He controlled his sleep schedule and the time of day he worked, and he was able to take breaks from his work if and when he became tired. Further, better than anyone else, Faught would know whether he felt fatigued.

Moreover, although the cost of injuries caused by fatigued driving is surely great, we believe a greater cost would follow the imposition of a duty on an employer to monitor employees for fatigue. Such an approach is not easily workable, if at all. It is not clear how an employer could monitor employee fatigue, much less how an employer could determine whether such fatigue was job related or, for that matter, whether the

8

fatigue is sufficient to intervene and attempt to prevent the employee from leaving the employer's premises, even if the employer had the authority to do so. And such a duty would likely lead to ad hoc, industry-specific decisions by our courts that set bright line caps on the number of hours an employee is allowed to work, but this is a task best left to employers or to the legislature. Such a duty would place a substantial burden on how employers manage their businesses and assign work to their employees. Thus, the public policy prong favors U.S. Steel.

**Conclusion**

Considering each of the three <u>Webb</u> factors, we hold that U.S. Steel did not owe Miriam a duty of reasonable care. While, in general terms, her injury was reasonably foreseeable, she had no relationship with U.S. Steel, and public policy strongly counsels against the imposition of a duty on employers to monitor worker fatigue. In sum, we do not believe reasonable persons would recognize such a duty and agree that it exists. Absent such a duty, U.S. Steel is entitled to summary judgment, and we affirm the trial court's entry of summary judgment in favor of U.S. Steel.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.