OPINION ON REHEARING



ATTORNEY FOR APPELLANT

John J. Schwarz, II
Schwarz Law Office, PC
Hudson, Indiana


ATTORNEYS FOR AMICUS CURIAE
INDIANA AGRICULTURAL LAW
FOUNDATION

Todd J. Janzen
Brianna J. Schroeder
Janzen Agricultural Law, LLC
Indianapolis, Indiana

John Shoup
Indiana Agricultural Law
Foundation, Inc.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE ROBIN
LATIMER

Martin R. Lucas
North Judson, Indiana

ATTORNEY FOR APPELLEE
DMK&H FARMS, INC.

James N. Clevenger
Wyland, Humphrey & Clevenger,
LLP
Plymouth, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Belork,

*Appellant-Petitioner*,

v.

Robin Latimer,
Davis Township Trustee

and

DMK&H Farms, Inc.

May 5, 2016

Court of Appeals Case No.
75A04-1503-MI-100

Appeal from the Starke Circuit
Court

The Honorable Kim Hall, Judge

Trial Court Cause No.
75C01-1406-MI-17

*Appellees-Respondents*.

## Brown, Judge.

In our opinion handed down on November 16, 2015, we affirmed the trial court's entry of judgment on the evidence in favor of Robin Latimer as the Davis Township Trustee and DMK&H Farms, Inc. ("DMK&H" and, together with Latimer, the "Appellees") with respect to John Belork's claim under Indiana's partition fence statutes found at Ind. Code §§ 32-26-9. Belork has petitioned for rehearing, arguing that we did not correctly apply the partition fence statutes. The Indiana Agricultural Law Foundation, Inc., (the "IALF") filed a Motion for Leave to File *Amicus Curiae* Brief in Support of Appellant's Petition for Rehearing together with its *amicus curiae* brief, and we have granted the IALF's motion and ordered that its brief be filed. In its brief in response to the petition for rehearing, DMK&H responded to the arguments presented by Belork and the IALF.

We note that this Court has been willing to reexamine its decisions and to grant petitions for rehearing, sometimes to reverse a previous decision. *See Safe Auto Ins. Co. v. Farm Bur. Ins. Co.*, 867 N.E.2d 221, 222-223 (Ind. Ct. App. 2007) (granting a petition for rehearing which argued in part that the initial opinion misapplied certain precedent and noting that *amicus curiae* had appeared on rehearing in support of the petition's position), *trans. denied*; *Edwards v. Vermillion Cnty. Hosp.*, 579 N.E.2d 1347, 1347-1348 (Ind. Ct. App. 1991)

(granting a petition for rehearing, vacating the original opinion, and arriving at a different conclusion regarding whether the petitioner was immune from liability under the Indiana Tort Claims Act), *trans. denied*; *McNevin v. McNevin*, 447 N.E.2d 611, 612-616 (Ind. Ct. App. 1983) (granting a petition for rehearing, vacating the original opinion, and arriving at a different conclusion regarding whether the petitioner's tort claim had been extinguished by a dissolution decree). Upon further consideration of the language of the provisions of Ind. Code §§ 32-26-9 set forth below and Belork's position and arguments, as further developed by the IALF, we conclude that granting Belork's petition is warranted.

## Facts and Procedural History

[3] Belork is the owner of real property in Starke County, Indiana, which he uses in part to raise cattle. Jan Ferch is the owner of real property along the eastern boundary of Belork's property, and Ferch's farming operation includes grain production. DMK&H is the owner of real property along the southern boundary of Belork's property, and its farming operation includes grain production. At some point, Belork rebuilt portions of fencing along the eastern and southern boundaries of his property, specifically, the "southern half" of a fence along his eastern boundary which was adjoining Ferch's property and the "western half" of a fence along his southern boundary which was adjoining

DMK&H's property.[1]  Transcript at 24.  Ferch did not complete the northern half of the fence along the Belork-Ferch property line, and DMK&H did not complete the eastern half of the fence along the Belork-DMK&H property line. Belork requested that Latimer as the Davis Township Trustee require Ferch and DMK&H to construct or fund the construction of the remainder of the fences along the shared boundaries.  Latimer did not grant Belork's request.

[4]  In June 2014, Belork filed a Petition for Writ of Mandamus pursuant to Ind. Code §§ 34-27-3 naming Latimer, as the Davis Township Trustee, as the respondent.[2]  Belork alleged that his farm is used primarily for the pasturing of cows, the land owned by Ferch and DMK&H is used for agriculture, he had rebuilt portions of the fence along the southern and eastern boundaries of his property, and he had requested that Ferch and DMK&H rebuild their respective portions of the fence line and they refused to do so.  He further alleged that he had requested Latimer as the Davis Township Trustee to adhere to her statutory duty to see that the line fence was completed and that Latimer wholly failed after reasonable requests to do so.  Belork requested that the court order

---

[1] At the February 9, 2015 hearing, Belork testified that he had completed these portions of the fence ten or twelve years ago.  He also indicated that, previously, there was a woven wire fence along the southern boundary of his property.

[2] Indiana Code § 34-27-1-1 abolished the writ of mandate but allows for an action for mandate.  *Malone v. Price*, 755 N.E.2d 213, 217 (Ind. Ct. App. 2001); Ind. Code § 34-27-1-1 ("Writs of mandate in the circuit and superior courts are abolished.  Causes of action previously remedied by writs of mandate may be remedied by means of complaint and summons in the name of the state on relation of the party in interest in the circuit, superior, and probate courts as other civil actions.  Such actions are to be known as actions for mandate.").  As noted below, Indiana Code §§ 34-27-3 govern actions for mandate.

Latimer to adhere to her obligations and award him attorney fees. DMK&H filed a motion to intervene as a respondent, and the court granted the motion.

[5] On February 9, 2015, the court held a bench trial at which the parties by counsel presented arguments and Belork testified. His counsel contended that Ind. Code §§ 32-26-9 "employs what has always been known as the right-hand rule," which exists where two adjoining property owners, facing each other at the center of the fence along their shared property boundary, each "agree to build [the] right half from the center of the property to the end of the property line." Transcript at 8. His counsel noted that it was disputed whether Belork built the western half of the new fence along the southern boundary of his property on the property line or on DMK&H's property, and stipulated that, at one point, Belork owned the property which is now owned by Ferch. DMK&H's counsel argued in part that there are overgrown trees and shrubs on Belork's property north of the fence and that it is impossible to access the fence row, that Belork maintains cattle on his property while the other farms grow grain, and that there is a history of Belork's cattle leaving his property and roaming DMK&H's fields causing damage. DMK&H's counsel stated there had been a judgment in 2003 stemming from an injunction in 1997 to keep Belork's cattle on his own property.

[6]     The court asked why Ind. Code § 32-26-9-1[3] applies in this situation because DMK&H did not use the fence for any purpose whatsoever. Belork's counsel stated that the statute applies if one of two adjoining parcels is agricultural. The court noted that the statute by its terms states that it applies to a fence that is "used by adjoining property owners as a partition fence." *Id.* at 34. Latimer's counsel argued that the partition fence statute applies when the fence is being used by both parties, that it makes sense for both parties to contribute to its maintenance, and that the statute does not state it applies where a fence "exists" between two parcels. *Id.* at 36. The court responded that, if both property owners receive a benefit from the fence, it would be fair for both owners to maintain the fence, and Latimer's counsel replied that such was clearly the intent of the statute. DMK&H's counsel then argued that the fence is of no benefit to DMK&H, it is not using the fence, the fence has been in a state of disrepair for years, and that it had been in court in 2003 on the same issues.

[7]     Belork's counsel then noted that, although the majority of farms in the area are grain production farmers, there is still an interest for both sides to have a fence, and that the only prerequisite for the statute to apply is that one of the parcels be used for agriculture. The court noted the statute does not refer to a fence that exists between adjoining property owners but to one that is used by the property owners, and asked Belork's counsel what evidence he had that

---

[3] Ind. Code § 32-26-9-1 provides: "A fence that is used by adjoining property owners as a partition fence, unless otherwise agreed upon by the property owners, is considered a partition fence and shall be repaired, maintained, and paid for as provided under this chapter."

DMK&H "used" the partition fence. *Id.* at 41. Belork's counsel replied that "[t]he only evidence . . . is that it is a fence that marks the property line as a partition." *Id.* Belork's counsel further stated that DMK&H was not keeping cattle, goats, sheep, or anything else loose on its property and that "I think their use is going to be limited to what marks the property line." *Id.*

[8] Belork testified that he raised cattle and used his property for pasturing them, that there had been a woven wire fence along the southern boundary of his property, and that "the new high-tensile wires actually touched the old woven wire fence post" so the new fence is "directly on the line of the previous fence." *Id.* at 58. When asked how long the previous fence had been there, he responded that "[t]he trustee made us put it in about 1948, 1949." *Id.* at 59. He indicated that he did not have to bulldoze or excavate anything in order to install the new fence and was able to cut back branches and shrubs with nippers. When asked if DMK&H could build the eastern portion of the fence along the southern boundary of his property "under the same basically limited difficulties that you incurred," Belork answered "[i]f I built it, they should be able to build it," and when asked if DMK&H would have to bring in an excavator or bulldozer, he replied "I would hope not." *Id.* at 60. When asked if it was feasible to rebuild the previous woven wire fence, Belork responded that, "because of the open land and the wind blows from the south, it turned up the fence line and the windbreak into a sand dune and a build up of sand." *Id.* at 61. He said that the woven wire fence "would help catch it and the sand would build up underneath it" and that his cattle "just stepped across" the

woven wire fence "[b]ecause of the sand build up." *Id.* at 62. Belork also testified that he sold the property owned by Ferch to her in 2000 or 2001.

[9] On cross-examination, Belork indicated that the properties owned by Ferch and DMK&H are used primarily for growing crops. When asked what use Ferch has for the fence, he replied: "Because the sheriff has complained about trespass and cattle grazing, their wheat and corn crops, et cetera." *Id.* at 66. To the question "[s]o really, the only use of the fence for them is a protection from you; that's what you're saying," Belork answered "[t]hat's what I'm saying." *Id.* He agreed that the purpose of the fences is to keep his cattle on his property, and acknowledged that his cattle "got out of his farm" in both 2014 and 2015, and that he did not keep a tally of the number of times. *Id.* at 83. When asked how many cattle left his property in January, Belork answered "[p]robably all of them" and that he had about forty cattle. *Id.* at 84. He stated that, to keep his cattle from leaving his property, he "run[s] a second, temporary electric fence. In other words, a single wire, hot wire that keeps the cows home." *Id.* at 87-88.

[10] Following the presentation of evidence, counsel for the Appellees moved for judgment on the evidence, arguing that they do not use the fence and thus the fence partition statute does not apply. In response, Belork's counsel argued that, if DMK&H "decides to start raising cattle or other type of animals, well haven't they just been totally benefited by [] Belork having put up the entire fence?" *Id.* at 95. His counsel asserted: "I think that's what the statute anticipates is that from time to time, some people grain farm. They may bring

animals in. They may not. But there's again, there may be a time when both parties are benefiting from the use of the fence." *Id.* at 95-96.

[11] The court asked whether, in a situation where there is farmland adjacent to a subdivision and the owner of the agricultural land decided he wanted to raise cattle, "each one of those residential property owners would be required to build a fence one-half of their property to the right to keep the cattle out of coming into their children's sandbox, and the swing set," and Belork's counsel replied "[t]hat would be correct." *Id.* at 96-97. The court also noted that the statute refers to structures that can hold cattle, hogs, horses, mules, and sheep and said that the statute "is meant for the purpose of keeping your own animals on your own side of the property" and "anticipates that both property owners have livestock." *Id.* at 99. The court noted that, "[t]o me, common sense has to come into play here," that "[c]ommon sense is, right from the very beginning, a fence that is used by adjoining property owners as a partition fence," and "[t]hat means to me, this statute and this fence law is for the purpose of keeping animals inside your own property for adjoining property owners" and is "not meant to apply to situations where . . . a property owner who has agriculture property that adjoins a subdivision in a city decides to have livestock" and is "not going to require each one of those residential areas to construct half a fence to keep the cattle from coming into their back yards." *Id.* at 99-100.

[12] The court granted the Appellees' motion, denied Belork's petition, and entered a written order granting the Appellees' motion for judgment on the evidence which included the following findings:

1) [Belork] directed this Court to Indiana Code 32-26-9 as the sole statutory authority to support his position.

2) I.C. 32-26-9-1 provides as follows:

> "A fence that is used by adjoining property owners as a partition fence, unless otherwise agreed upon by the property owners, is considered a partition fence and shall be repaired, maintained, and paid for as provided under this chapter."

3) When one "uses" a fence, he derives a benefit from the fence.

4) The benefit contemplated by the fence addressed by the statute is the control of one's own livestock.

5) In other words, the statute sets forth the responsibilities of adjoining property owners who both "use" the fence to keep their livestock on their own property.

6) I.C. 32-26-9-3 reinforces that the application of the statute is to livestock when it discusses the need to secure, ". . . hogs, sheep, cattle, mules, and horses or other domestic animals."

7) It is clear that the legislature enacted the statue [sic] to set forth the respective responsibilities of adjoining land owners to maintain a partition fence to keep their livestock within the boundaries of their respective properties.

8) If the legislature had intended to have the statute applicable to all adjoining property owners, regardless of any benefit derived from the fence, they could have simply crafted the statute to state, "A fence that exists between adjoining property owners, . . . ."

9) To interpret the statute otherwise would require all property owners, including residential, to incur the cost of one-half of a fence to assist their neighbor in keeping his livestock on his own property.

10) The evidence is uncontroverted that [Belork] is the only property owner with livestock and the only property owner who

"uses" the fence. Belork uses the fence to keep his livestock on his property.

11) The evidence is uncontroverted that the adjoining property owners, DMK&H [] and [] Ferch, are grain farmers, do not "use" the fence, and derive no benefit from the fence.

12) The Court declines to apply I.C. 32-26-9 to the uncontroverted facts of this case.

13) [Belork] cited no statutory authority nor Indiana case law that would direct this Court to reach any other conclusion.

Appellant's Appendix at 5-6.

### Issue and Standard of Review

[13] The issue is whether the trial court erred in granting the Appellees' motion for judgment on the evidence. Indiana Trial Rule 50 provides that a motion for judgment on the evidence shall be granted "[w]here all or some of the issues in a case . . . are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it . . . ." Ind. Trial Rule 50(A). A motion for judgment on the evidence should be granted "only when there is a complete failure of proof because there is no substantial evidence or reasonable inference supporting an essential element of the claim." *Coldwell Banker Roth Wehrly Graber v. Laub Bros. Oil Co.*, 949 N.E.2d 1273, 1282 (Ind. Ct. App. 2011) (quoting *Raess v. Doescher*, 883 N.E.2d 790, 794 (Ind. 2008) (quoting *Dahlin v. Amoco Oil Corp.*, 567 N.E.2d 806, 810 (Ind. Ct. App. 1991), *trans. denied*), *reh'g denied*), *trans. denied*. Upon appellate review of a trial court's ruling on such a motion, the reviewing court

must consider only the evidence and reasonable inferences most favorable to the nonmoving party. *Id.* at 1282-1283.

[14]  Ind. Code § 34-27-3-1 governs actions for mandate and provides:

> An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any:
>
> > (1) act that the law specifically requires; or
> >
> > (2) duty resulting from any office, trust, or station.

[15]  An action for mandate, an extraordinary remedy of an equitable nature, is generally viewed with disfavor. *Malone v. Butts*, 974 N.E.2d 1025, 1027 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*. Mandamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law. *Id.* (citation omitted). The mandamus action does not lie to establish a right or to define and impose a duty. *Id.* (citation omitted). Public officials, boards, and commissions may be mandated to perform ministerial acts when under a clear legal duty to perform such acts. *Id.* (citation omitted). Mandate actions exist only where no adequate remedy at law is available. *Id.* (citation omitted).

### *The Parties' Arguments*

[16]  Belork contends that, because he, Ferch, and DMK&H all utilize their lands as agricultural land, the fence partition statute is controlling and requires the adjoining landowners to build their respective halves of the partition fences once Belork has built his. He asserts that the legislature amended the Indiana

Fence Law in 2003 by adding Ind. Code § 32-26-9-0.5 to define agricultural land and that, if the legislature "intended to limit the Indiana Fence Law to situations where both adjoining landowners 'used' the partition fence, i.e. owned livestock, surely the legislature would have provided an alternative definition to 'agricultural land' or directly stated that the Indiana Fence Law only applies when all adjoining owners raise livestock." Appellant's Brief at 16. He also argues that prior Indiana cases have not made any distinction based on whether one of the adjoining parcel owners uses the partition fence.

[17] Latimer contends that Indiana common law places a duty upon the owner of an animal to confine it, that this principle is codified at Ind. Code § 32-26-2-2,[4] Belork conceded that the intention of the fence is to contain his cattle on his property, and that he is solely responsible for this. Latimer further argues that the statute requires that the adjoining property owners "use" the fence "as a partition fence," this "implies that not all fences are partition fences," and that "this implication is borne out by I.C. § 32-26-2-15." Appellee Latimer's Brief at 5. She also contends that no testimony or evidence suggested that fences are helpful to modern grain farming operations and that nothing in the statute even remotely suggests that one of the purposes of the law is wind erosion control.

---

[4] Ind. Code § 32-26-2-2(b) provides that, in the absence of adoption of an open range ordinance by the county commissioners, "if a domestic animal breaks into an enclosure or enters upon the property of another person, it is not necessary for the person injured by the actions of the domestic animal to allege or prove the existence of a lawful fence to recover for damage done."

[18]  DMK&H maintains that the evidence presented by Belork was not whether a partition was needed to divide the properties but rather was a request to use Ind. Code § 32-26-9-1 to force his neighbors into rebuilding a fence his cattle had destroyed, and to stop his cattle from trespassing on DMK&H's lands.

[19]  In its amicus brief, the IALF argues that the partition fence statute has been interpreted broadly to require neighboring property owners to share responsibility for maintaining partition fences regardless of property use. It asserts that the Indiana legislature has considered and rejected imposing a use requirement into the statute, that Ind. Code § 32-26-9-1 applies to existing fences, and the purpose of the section is to address agreements between neighbors regarding how to handle partition fences and fences that, while not constructed directly on a boundary line, have been treated and used as boundary or partition fences.

### *Indiana Fence Law*

[20]  The statutory provisions set forth in Ind. Code §§ 32-26 relate to fences in Indiana and address issues such as the recording of agreements to erect and repair fences and fencemarks, the enclosure of land subject to flooding, and the cutting and trimming of live fences along public highways and between adjoining lands. Partition fences are governed primarily by Ind. Code §§ 32-26-9 and certain sections of Ind. Code §§ 32-26-2.

[21]  Ind. Code §§ 32-26-9 is titled "Partition Fences." Ind. Code § 32-26-9-0.5 provides:

(a) As used in this section, "agricultural land" means land that is:

> (1) zoned or otherwise designated as agricultural land;

> (2) used for growing crops or raising livestock; or

> (3) reserved for conservation.

(b) This chapter does not apply to a fence that separates two (2) adjoining parcels of property unless at least one (1) of the adjoining parcels is agricultural land.

Ind. Code § 32-26-9-1 is titled "Existing fences" and provides:

> A fence that is used by adjoining property owners as a partition fence, unless otherwise agreed upon by the property owners, is considered a partition fence and shall be repaired, maintained, and paid for as provided under this chapter.

Ind. Code § 32-26-9-2 is titled "Lands outside or abutting municipal boundary" and provides:

> (a) The owner of a property that:

> > (1) is located outside;

> > (2) abuts; or

> > (3) is adjacent to;

> the boundary of the corporate limits of a town or city shall separate the owner's property from adjoining properties by a partition fence constructed upon the line dividing or separating the properties regardless of when the properties were divided.

> (b) Except as otherwise provided in this chapter, and if a division of the partition fence has not been made between the property owners for the building, repairing, or rebuilding of the partition fence:

> > (1) for a partition fence built along a property line than [sic] runs from north to south:

(A) the owner whose property lies to the east of the fence shall build the north half of the fence; and

(B) the owner whose land lies to the west of the fence shall build the south half of the fence; and

(2) for a partition fence built along a property line that runs from east to west:

(A) the owner whose property lies north of the fence shall build the west half of the fence; and

(B) the owner whose property lies to the south of the fence shall build the east half of the fence.

(c) Notwithstanding subsection (b), if either property owner has constructed one-half (½) of a partition fence that is not the portion required under subsection (b) and has maintained that portion of the partition fence for a period of not less than five (5) years, the property owner may continue to maintain the portion of the fence.

(d) If a property owner fails to build, rebuild, or repair a partition fence after receiving notice under this chapter, the township trustee of the township in which the property is located shall build, rebuild, or repair the fence as provided under this chapter.

[24]     Ind. Code § 32-26-9-3, titled "Defaulting landowner; description of lawful partition fence; floodgates across water courses," relates in part to the role of a township trustee and provides in part:

(a) A partition fence shall be built, rebuilt, and kept in repair at the cost of the property owners whose properties are enclosed or separated by the fences proportionately according to the number of rods or proportion of the fence the property owner owns along the line of the fence, whether the property owner's title is a fee simple or a life estate.

(b) If a property owner fails or refuses to compensate for building, rebuilding, or repairing the property owner's portion of a

partition fence, another property owner who is interested in the fence, after having built, rebuilt, or repaired the property owner's portion of the fence, shall give to the defaulting property owner or the defaulting property owner's agent or tenant twenty (20) days notice to build, rebuild, or repair the defaulting property owner's portion of the fence. If the defaulting property owner or the defaulting property owner's agent or tenant fails to build, rebuild, or repair the fence within twenty (20) days, the complaining property owner shall notify the township trustee of the township in which the properties are located of the default.

* * * * *

(d) The township trustee who receives a complaint under this section shall:

> (1) estimate the costs for building, rebuilding, or repairing the partition fence; and

> (2) within a reasonable time after receiving the complaint, make out a statement and notify the defaulting property owner of the probable cost of building, rebuilding, or repairing the fence.

If twenty (20) days after receiving a notice under this subsection the defaulting property owner has not built, rebuilt, or repaired the fence, the trustee shall build or repair the fence. The trustee may use only the materials for the fences that are most commonly used by the farmers of the community.

* * * * *

(f) A lawful partition fence is any one (1) of the following that is sufficiently tight and strong to hold cattle, hogs, horses, mules, and sheep:

> (1) A straight board and wire fence, a straight wire fence, a straight board fence, or a picket fence four (4) feet high.

> (2) A straight rail fence four and one-half (4 ½ ) feet high.

> (3) A worm rail fence five (5) feet high.

Other subsections of Ind. Code § 32-26-9-3 relate to, among other things, when a fence is sought on a township line, when a trustee is disqualified to act, when a ditch or creek crosses the division line between two property owners, and when floodgates or similar structures should be constructed. *See* Ind. Code §§ 32-26-9-3(c), (e), (g)-(m).

[25]     Ind. Code § 32-26-9-6 (eff. Jul. 1, 2003),[5] titled "Construction and application of law," provides:

> This chapter shall be liberally construed in favor of the objects and purposes for which it is enacted and shall apply to all agricultural land, whether enclosed or unenclosed, cultivated or uncultivated, wild or wood lot.

[26]     In addition, several sections of Ind. Code §§ 32-26-2, titled "Enclosures, Trespassing Animals, and Partition Fences," relate to partition fences. In particular, Ind. Code § 32-26-2-15 is titled "Existing fence becoming partition fence; compensation" and provides:

> When a fence that is already erected becomes a partition fence because previously unenclosed property is enclosed, the person who encloses the previously unenclosed property shall pay to the owner of the existing fence fifty percent (50%) of the value of the existing fence, as estimated by the owner of the existing fence.

---

[5] Ind. Code § 32-26-9-0.5 became effective on July 1, 2003, and Ind. Code § 32-26-9-6 was amended, effective on that date, to include the word "agricultural" in referring to "agricultural land." *See* Pub. L. No. 57-2003, §§ 1-2 (eff. Jul. 1, 2003).

Ind. Code § 32-26-2-18 is titled "Notice; intention to remove partition fence" and provides:

> This section applies to a person who ceases to use the person's property or opens the person's enclosures. A person to whom this section applies may not remove any part of the person's fence that forms a partition fence between the person's property and the enclosure of any other person until the person to whom this section applies has first given six (6) months notice of the person's intention to remove the fence to any person who may be interested in the removal of the fence.

## Discussion

We address whether the fences that exist and the fences Belork desires to be constructed along the southern and eastern boundaries of his property constitute or would constitute partition fences under Ind. Code §§ 32-26-9 requiring DMK&H and Ferch to construct or fund the construction of portions of the fences. The first step in interpreting a statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind. 2005). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* When a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. *Id.* When faced with an ambiguous statute, our primary goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id.* To effectuate legislative intent, we read the sections of an act

together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* We also examine the statute as a whole and do not presume that the legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. *Id.* at 4-5.

[28] We will first address Ind. Code §§ 32-26-9-2 and -3, which are the operative sections of the chapter relating to the construction and subsequent repair of partition fences, and then we will address the Appellees' arguments related to Ind. Code § 32-26-9-1 and the circumstances to which that section is applicable.

[29] With respect to Ind. Code §§ 32-26-9-2 and -3, we note that Ind. Code § 32-26-9-2(a) provides in part that an owner of a property that is located outside, abuts, or is adjacent to the boundary of the corporate limits of a town or city "shall separate the owner's property from adjoining properties by a partition fence *constructed upon the line dividing or separating the properties* regardless of when the properties were divided." (Emphasis added). Thus, according to subsection 2(a), a partition fence is one which is "constructed upon the line dividing or separating adjoining properties." Similarly, Ind. Code § 32-26-9-3(a) provides in part that a partition fence shall be built, rebuilt, and kept in repair at the cost of the property owners whose "properties are . . . separated by the fences." There is no language in Ind. Code §§ 32-26-9-2 or -3 which suggests that a fence constructed upon the line dividing or separating adjoining properties is exempt from Ind. Code §§ 32-26-9-2 and -3 on the basis that one of the adjoining

property owners does not use or make certain beneficial use of the partition fence.[6]

[30]     We also observe that Ind. Code § 32-26-9-0.5(a) provides that "agricultural land" includes land that is "used for growing crops or raising livestock," that Ind. Code § 32-26-9-0.5(b) states that the partition fence chapter does not apply "unless at least one [] of the adjoining parcels is *agricultural land*," and that Ind. Code § 32-26-9-6 states in part that the partition fence chapter "shall apply to *all agricultural land*, whether enclosed or unenclosed . . . ." (Emphases added). While these sections provide that Ind. Code §§ 32-26-9 applies where at least one adjoining parcel is agricultural land, neither section limits the application of the chapter based on the fact that one of the adjoining parcel owners does not make certain beneficial use of the partition fence.

[31]     We conclude that the sections above, considered together, demonstrate that the intent of the legislature was to require adjoining parcel owners to build and keep in repair a partition fence constructed upon the line dividing or separating their parcels as set forth in Ind. Code §§ 32-26-9-2 and -3, provided that one of the parcels is located outside, abuts, or is adjacent to the boundary of the corporate limit of a town or city, *see* Ind. Code § 32-26-9-2(a), and is agricultural

---

[6] We note that in 1999 there was a proposed modification to Ind. Code § 32-26-9-2, which would have become effective July 1, 2000, and which would have provided in part that, subject to certain restrictions, an owner of a tract of land who does not keep livestock would not be liable for costs incurred by the owner of an adjoining tract of land in constructing or repairing a partition fence. Senate Bill No. 101 (2000). The legislature did not enact the proposed modifications to the statute.

land. *See* Ind. Code §§ 32-26-9-0.5, -6. Moreover, these sections do not limit the applicability of the construction and repair requirements of Ind. Code §§ 32-26-9-2 or -3 based on the fact that one or both of the parcel owners may not make certain beneficial use of the partition fence.

[32] We next address the Appellees' argument that the effect of Ind. Code § 32-26-9-1 is to limit the application of the chapter to those circumstances in which both adjoining property owners make or would make beneficial use of a partition fence separating their properties. We note that Ind. Code § 32-26-9-1 pertains to existing fences.[7] Moreover, we must read Ind. Code § 32-26-9-1 together with Ind. Code §§ 32-26-9-2 and -3 so that none of the sections are rendered meaningless and all may be given effect. Accordingly, we note that Ind. Code §§ 32-26-9-2 and -3 contain the operative provisions governing the construction and subsequent repair and maintenance of partition fences under the chapter. Ind. Code § 32-26-9-1 establishes that certain existing fences are also subject to these repair and maintenance provisions. Specifically, by providing that "[a] fence that is used by adjoining property owners as a partition fence . . . is considered a partition fence and shall be repaired, maintained, and paid for as provided under this chapter," Ind. Code § 32-26-9-1 permits adjoining parcel owners to treat an existing fence, including an existing fence which is not located on or precisely on the line dividing the adjoining parcels, as a partition

---

[7] Ind. Code §§ 32-26-2-15 and -18 also relate to existing fences which have served as or have been treated as partition fences.

fence. The section provides that if adjoining owners have treated or "used" an existing fence as a partition fence, or an existing fence has served as a partition fence, then, for purposes of allocating the cost and responsibility of keeping the fence in repair, the provisions of Ind. Code § 32-26-9-2 and -3 are applicable, and the parcel owners may not avoid their respective maintenance obligations on the basis that the fence is not located on or precisely on the line dividing their parcels. Thus, adjoining parcel owners can treat a fence not initially constructed on the true property line between their parcels as a partition fence, and in that circumstance the fence will be considered a partition fence for purposes of the maintenance and repair requirements and cost-sharing provisions of the partition fence statute. *See Burck v. Davis*, 35 Ind. App. 648, 73 N.E. 192, 193 (1905) (noting that a fence separated two parcels, that one of the parcel owners refused to rebuild or repair her part of the fence, that the other parcel owner served notice to the township trustee who had the fence rebuilt, and that the first parcel owner did not pay for the repair and objected that the fence was not on the line dividing the lands of the parties; observing that the statute at the time provided that "all fences now constructed and used by adjoining landowners as a partition fence or fences . . . shall be deemed partition fences, and shall be built, maintained, repaired and paid for as hereinafter provided"; and concluding that the complaint "showed, in the language of the statute, that [the fence at issue] was such a fence as must be deemed a partition fence"); *see also Capps v. Abbott*, 897 N.E.2d 984, 986-988 (Ind. Ct. App. 2008) (concluding that the appellees had used and improved the land on their side of a fence and, citing *Freiburger* below, that the appellants

were estopped from denying that the fence constituted the legal boundary line); *Freiburger v. Fry*, 439 N.E.2d 169, 172-173 (Ind. Ct. App. 1982) (observing that two adjoining parcel owners erected "a partition fence and treated that fence as a legal boundary line" and that the partition fence was erected along an existing fence line except for moving one corner post thirty feet and concluding that, when adjoining landowners agree to treat a fence as a legal boundary, they are estopped from denying it as the legal boundary line, and that "[u]se and improvement of the land up to the alleged boundary line may be sufficient to satisfy the requirement of an agreement if the adjoining landowner acquiesces").

[33] In sum, Ind. Code § 32-26-9-1 establishes that an existing fence, including one which may be not be located entirely on the shared boundary of adjoining parcels, is nonetheless subject to the maintenance and repair and cost-sharing provisions of Ind. Code §§ 32-26-9-2 and -3 if the fence has served as or has been treated or used as a partition fence by the adjoining parcel owners. There is no claim that this circumstance occurred here, and thus Ind. Code § 32-26-9-1 is not applicable in this case.

[34] Belork has requested that partition fences be constructed or completed along the southern and eastern boundaries of his property pursuant to the partition fence statute. He seeks relief provided by the statutory procedures set forth at Ind. Code §§ 32-26-9-2 and -3 and, accordingly, notified Latimer as the township trustee of his complaint. The Appellees do not assert that the properties of

Belork, DMK&H, and Ferch do not constitute agricultural land under Ind. Code §§ 32-26-9-.5 and -6 or are not located outside the boundary of the corporate limits of a town or city under Ind. Code § 32-26-9-2(a). The requirements of Ind. Code §§ 32-26-9-2 and -3 are applicable to the fences at issue. The fact that DMK&H and Ferch claim they will not use or make certain beneficial use of the partition fences does not exempt the fences from Ind. Code § 32-26-9-2 and -3. *See Ashley v. Kelley*, 84 Ind. App. 303, 149 N.E. 377, 377 (1925) (observing, where the appellants argued that a fence constructed along their parcel's boundary would not be of any use, value, or service to them and would be of service only to the appellee, that the partition fence statute applied "to all lands whether inclosed or uninclosed, cultivated or uncultivated, wild or wood lot," and affirming the judgment of an assessment for the building of the partition fence on the line between the parties' parcels), *reh'g denied*; *see also Myers v. Dodd*, 9 Ind. 290, 292 (1857) (concluding in part, where the cattle of one parcel owner escaped into the corn field on an adjoining parcel, that both parcel owners were equally bound to maintain a partition fence and that either might have repaired it and enforced contribution from the other); *Stephenson v. Elliott*, 2 Ind. App. 233, 28 N.E. 326, 326-327 (1891) (concluding in part that two tenant farmers, one of whom had horses and cows and the other of whom had a wheat field, occupied to each other the relation of

adjoining property owners and thus were equally bound to maintain a partition fence).[8]

Based on the record, we conclude that the fences Belork desires to be constructed or completed along the southern and eastern boundaries of his property constitute partition fences under Ind. Code §§ 32-26-9. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## *Conclusion*

For the foregoing reasons, we grant Belork's petition for rehearing, vacate our opinion of November 16, 2015, reverse the trial court's order, and remand for further proceedings.

Reversed and Remanded.

Altice, J., concurs.

Riley, J., dissents with separate opinion.

---

[8] Because the desired partition fences are not exempt from Ind. Code §§ 32-26-9-2 and -3 on the grounds that DMK&H and Ferch claim they will not use or make any certain beneficial use of the fences, we need not address the various arguments regarding beneficial use, such as whether the fences constitute capital improvements of the properties.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Belork, | Court of Appeals Case No. |
| *Appellant-Petitioner,* | 75A04-1503-MI-100 |
| v. | |
| Robin Latimer, Davis Township Trustees, and DMK&H Farms, Inc., | |
| *Appellee-Respondent.* | |

**Riley, Judge dissenting**

[38] I dissent from the majority's opinion on rehearing, which vacates our opinion of November 16, 2015, and reverses the trial court's order. I would deny Belork's petition for rehearing and reaffirm our earlier opinion in every respect.

[39] In our opinion of November 16, 2015, we concluded "that the fences Belork desires along the southern and eastern boundaries of his property would not constitute partition fences under Ind. Code §§ 32-26-9." *Belork v. Latimer*, 2015 WL 7185539, *10 (Ind. Ct. App. Nov. 15, 2015). We addressed the issue precisely as framed by the parties, and we did not *sua sponte* venture into issues which were not raised. We analyzed the arguments of the parties in detail and addressed them fully. There was no surprise in our first opinion and I see no reason to disturb our carefully crafted decision.

[40] Nonetheless, Belork, pursuant to Ind. Appellate Rule 54, now seeks rehearing. He presents us with essentially the same arguments, with the request to this court to try again—a request which the majority took to heart. The only difference this time is the presence of the *amicus curiae*, Indiana Agricultural Law Foundation, which aligned itself with Belork's position. Like here, *amicus curiae* briefs are often attempts to inject interest-group politics into the appellate process by flaunting the interest of the trade association or other interest group in the outcome of the appeal. From its brief, it is apparent that Indiana Agricultural Law Foundation is not a neutral advisor, but rather is clearly in the driver's seat in these rehearing proceedings.

[41] Curiously, although an *amicus curiae* is not a party and has traditionally no control over the proceedings, the majority appears to consider the *amicus* here as an equal partner, quoting from its brief in the parties' section of the majority opinion.

[42] I would deny the petition for rehearing as it merely exhausts precious judicial resources that could be expended elsewhere. There are sound reasons for requiring a party to present all known arguments or claims to an appellate court before its decision is rendered. Belork did just that in his appellate brief and there is no reason to revisit our analysis.